HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHERYL FIFE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SCIENTIFIC GAMES CORP.,

Defendant.

CASE NO. 2:18-cv-00565-RBL

ORDER GRANTING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AND DENYING DEFENDANT'S MOTION TO DISMISS

DKT. #28

## INTRODUCTION

THIS MATTER is before the Court on Defendant Scientific Games Corp.'s Request for Judicial Notice and Motion to Dismiss. Dkt. #28. The underlying dispute is a class action to recover money lost playing electronic gambling games available through mobile apps. Scientific argues that the Complaint should be dismissed for failure to state a claim. Specifically, Scientific contends that its apps do not allow users to gamble for a "thing of value" and qualify for the statutory exemption for "bona fide business transactions."

## BACKGROUND

Scientific markets apps that allow players to partake in popular gambling games, such as slot machine, on a phone or tablet. Complaint, Dkt. #1, at 1-2. The apps allow users to play these

1    games with "virtual coins" that may be won or purchased in the app after users run out of the

2    initial free allotment. *Id.* at 6-7. Fife purchased $4.99 worth of coins that he subsequently lost

3    playing Scientific's Jackpot Party Casino app. *Id.* at 9. Despite the fact that these coins cannot be

4    redeemed for actual money, Fife alleges that they are nonetheless valuable because they can be

5    used to continue playing. *Id.* at 13. Therefore, Fife alleges that the games on High 5's apps

6    constitute gambling as defined by RCW 9.46.0285 in violation of RCW 4.24.070. *Id.* at 11-13.

7    Fife also alleges two derivative claims for violation of the Washington Consumer Protection Act,

8    RCW 19.86.010, and unjust enrichment. *Id.* at 13-16.

9                                **DISCUSSION**

10   **I.      Judicial Notice and Incorporation by Reference**

11   *a.     Legal Standard*

12           At the motion to dismiss stage, documents outside the complaint may only be considered

13   if they fall within an exception to the "general rule [that] 'a district court may not consider any

14   material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*,

15   250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)

16   (overruled on other grounds)). There are two such exceptions. "First, a court may consider

17   'material which is properly submitted as part of the complaint' on a motion to dismiss without

18   converting the motion to dismiss into a motion for summary judgment." *Id.* (quoting *Branch*, 14

19   F.3d at 453). If such documents are not attached to the complaint, the documents' authenticity

20   must be uncontested and the complaint must necessarily rely on them. *Id.* (citing *Parrino v.*

21   *FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998)).

22           "Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public

23   record.'" *Id.* at 688-89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th

24

1   Cir.1986)). However, a court can only take judicial notice of matters that are "not subject to

2   reasonable dispute," which means they are "generally known" or "can be accurately and readily

3   determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen*

4   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).

5   Consequently, disputed factual content in public records is not subject to judicial notice. *Id.* If the

6   documents supplied by the defendant do not fall within either exception, the court must convert

7   the motion to dismiss to a motion for summary judgment and "all parties shall be given

8   reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

9   Fed.R.Civ.P. 12(c).

10   b.     *Scientific's Jackpot Party Casino App, Video, Screenshots, and FAQ Page*

11          Scientific requests that the Court take judicial notice of several forms of evidence

12   regarding the gameplay in Jackpot Casino. Specifically, Scientific has supplied the Court with a

13   copy of the game itself, a video of someone playing the game, screenshots depicting the

14   gameplay, and screenshots of the Frequently Asked Questions page from Scientific's website.

15   Dkt. #31, Exs. A-D. Scientific argues that these documents are analogous to similar forms of

16   electronic external documents that courts have considered at the motion to dismiss stage.

17   According to Scientific, Fife's entire Complaint relies on the functionality and design of

18   Scientific's apps, which allows the Court to take judicial notice of these documents.

19          Fife responds that the authenticity of these documents is in question because "there is no

20   reason to believe that the version of the game submitted in [the] exhibits is the same one that Ms.

21   Fife played." Opp'n., Dkt. #35, at 17. Fife also contests whether the games in the video and

22   screenshots are "played in the same manner" or "behaved in the same way" as when Fife played

23

24

them. According to Fife, these concerns distinguish this case from others in which courts have considered external electronic documents, such as games, movies, and websites.

Although courts must "draw all reasonable inferences from the complaint" in favor of the plaintiff, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013), this does not permit a plaintiff to pick and choose excerpts from a document when the claims turn on its entire contents. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The key is determining whether the complaint "necessarily depend[s]" on the additional documents or whether the documents merely allow the defendant to "insert their own version of events" into a motion to dismiss. *Id*.

In *Knievel v. ESPN*, the Ninth Circuit found that a screenshot of the webpage containing an allegedly defamatory statement could be considered at the motion to dismiss stage even though it was never referenced directly in the complaint. 393 F.3d 1068, 1076 (9th Cir. 2005). The court reasoned that the plaintiff's defamation claim required considering the "web pages in the context of the links through which the user accessed those pages." *Id*. In *Brown v. Electronic Arts, Inc.*, the court applied the same logic to a video game where the plaintiff alleged that his likeness was "not artistically relevant" to the game. 724 F.3d 1235, 1247 (9th Cir. 2013).

These cases make clear that electronic documents may be incorporated by reference if the complaint relies on them. Here, it does. Fife's claim that Scientific's games constitute illegal gambling turns on the overall functioning and design of the app. Consequently, these documents can be considered if they are authentic. Fife's primary argument that they are not is that the version of the game submitted to the court and depicted in the screenshots and videos may not match the version Fife played. However, Fife does not actually assert that it is a different version and Scientific states that the screenshot sent by Fife's counsel confirms that she played the same

version submitted to the Court. Courts need not entertain vague assertions of inauthenticity, *Rhodes v. Robinson*, 399 F. App'x 160, 165 (9th Cir. 2010), and Fife could easily determine whether Version 5001.04, which was submitted by Scientific, matches the version she played. Because Fife had this ability but failed to raise a more specific argument against authenticity, the Court will assume that the versions are the same.

Fife's other arguments regarding whether Scientific's evidence depicts the same "manner" and "behavior" of gameplay have less merit. Fife's claims depend on the functioning of Scientific's games themselves, not just her experience with them. As a result, it does not matter whether the screenshots or videos may depict a different approach to gameplay than Fife's. The only issue is whether they in any way distort the inherent properties of the game. The game, videos, and screenshots do not do this because they are direct depictions of gameplay.

However, the same cannot be said of the FAQ page. While Fife's Complaint may necessarily rely on Scientific's game, it does not rely on second-hand descriptions of it from the defendant's own website. Such documents thus are not incorporated by reference. Judicial notice is also inappropriate because the FAQ page's assertions do not derive from a "source whose accuracy cannot reasonably be questioned." *Khoja*, 899 F.3d at 999. The Court may take judicial notice of the *existence* of the FAQ page, but not the truth of the statements found therein. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014). Consequently, the Court will consider Scientific's game, video, and screenshots, but not the FAQ page.

*c.    Washington State Gambling Commission Documents*

Scientific also asks the Court to take judicial notice of several documents from the Washington State Gambling Commission, including a brochure, meeting minutes, a PowerPoint presentation, and two press releases. Dkt. #31, Exs. E-I. Fife does not object to the Court taking

1  judicial notice of these documents and they are public records whose authenticity cannot

2  reasonably be disputed. The Court will therefore consider these documents.

3  **II.     Failure to State a Claim**

4  *a.     Legal Standard*

5          Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

6  theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

7  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

8  facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

9  678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

10  content that allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,

12  conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

13  12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

14  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

15  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

16  and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

17  must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

18  550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead

19  "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at

20  678 (citing *id.*).

21          On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

22  amend the pleading was made, unless it determines that the pleading could not possibly be cured

23  by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

24

247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether

there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v.*

*Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

b.      *Whether Scientific's Virtual Coins are a "Thing of Value" under Washington Law*

Scientific argues that its apps cannot meet the definition of "gambling" in RCW

9.46.0237 because players never stake "something of value" on the outcome of games. RCW

9.46.0285 defines "thing of value" as follows:

> [1] any money or property, [2] any token, object or article
> exchangeable for money or property, or [3] any form of credit or
> promise, directly or indirectly, [a] contemplating transfer of money
> or property or of any interest therein, or [b] involving extension of
> a service, entertainment or a privilege of playing at a game or
> scheme without charge.

According to Scientific, this definition cannot apply to its app because the term "without charge"

implies that the game cannot be free to play, which Scientific claims its games are.

In a very similar case involving app-based gambling games, the Ninth Circuit reasoned

that, "if a user runs out of virtual chips and wants to continue playing Big Fish Casino, she must

buy more chips to have 'the privilege of playing the game.' Likewise, if a user wins chips, the

user wins the privilege of playing Big Fish Casino without charge." *Kater v. Churchill Downs*

*Inc.*, 886 F.3d 784, 787 (9th Cir. 2018) (quoting RCW 9.46.0285). However, the court did not

address whether additional free coin allotments would alter this analysis, and Scientific argues

that they do. *See id*.

Examining Scientific's Jackpot Party Casino app shows that players can receive coins at

multiple points. First, players receive an initial allotment of 6,000,000 coins. Second, upon

entering the app, players also get to spin a "Daily Bonus" wheel that can award anywhere from

700,000 to 40,000,000 additional coins. Third, players are awarded a "bonus" allotment of

1   around 200,000 coins every hour. Finally, players can also receive extra coins when they "level

2   up" or accomplish various tasks through playing.

3   However, these free coin awards must be considered alongside the other aspects of

4   Scientific's app. Although there are many different slot machine games to choose from, each one

5   appears to require bets of at least 48,000 coins per spin, and each spin lasts just a couple seconds.

6   This means that a player's coin balance can drop very quickly and the various bonuses do little to

7   replenish it. Once a player's balance drops below the lowest possible bet for a game, a "COIN

8   SALE" pop-up screen appears. This screen lists several "packages" for purchasing coins

9   ("20,000,000 FOR ONLY $4.99") and an additional message: "PURCHASE a coin package

10  above to keep spinning!" There is no indication that players can continue playing for free when

11  they can no longer have enough coins to bet.

12  The additional free coin allotments thus do not remove Scientific's app from the "thing of

13  value" definition. *Kater* did not predicate its holding on whether the privilege of playing was

14  *permanently* lost, but instead explained that the privilege was lost when a player "must buy more

15  chips" to keep playing. *See* 886 F.3d at 787. It therefore does not matter that a player may obtain

16  more free coins after an hour because, until that time, they cannot play Scientific's games free of

17  charge. Furthermore, although Scientific makes much of how frequently coins are awarded, the

18  size of these awards and the speed at which coins can disappear mean that playing Scientific's

19  apps requires payment much of the time. Purchasing coins is therefore not only necessary to

20  "enhance" gameplay, but is also required to "extend" it. Motion, Dkt. #28, at 16.

21  *Bullseye Distributing LLC v. State Gambling Commission*, the case the Ninth Circuit

22  mainly relied on in *Kater*, supports this conclusion. 127 Wash.App. 231 (2005). In *Bullseye*,

23  players could obtain a sports card from an electronic slot machine either by inserting money into

24

1   the machine, using credits earned from prior play sessions, or presenting a promotional voucher.

2   *Id*. at 235. Despite the fact that players could obtain a new voucher each day through a number of

3   means, the court still held that the credits earned from play sessions were a "thing of value" that

4   extended the ability to play. *Id*. at 235, 242. Thus, just as the players in *Bullseye* could wait a day

5   to regain their play privileges through a new voucher, Scientific's players could wait an hour or

6   so for another free spin. Nonetheless, in both cases, the credits and coins are a "thing of value"

7   because they extend the privilege of playing a game that would otherwise cost money.

8       Finally, the various Gambling Commission materials submitted by Scientific are

9   unpersuasive. While the pamphlet offered by Scientific does state that social gaming is not

10  gambling if there is no prize, it also purports to provide only "general guidance" to consumers.

11  Dkt. #43-1. The Ninth Circuit already declined to defer to this pamphlet, the slideshow, and the

12  meeting minutes. *See Kater*, 886 F.3d at 788; Dkt. #31, Exs. E-G. Likewise, the Commission's

13  press releases regarding the Ninth Circuit's *Kater* ruling merely assert that the Commission did

14  not participate in the case and that it may continue for several more years. They do not express

15  any specific position with respect to the underlying issues. Dkt. #31, Exs. H, I.

16  *c.*   *Whether Scientific's In-App Purchases are "Bona Fide Business Transactions"*

17      Scientific also argues that its app is exempt from the statutory prohibition on gambling

18  because it falls within the "bona fide business transaction" exception. This exception reads as

19  follows:

20       Gambling does not include fishing derbies as defined by this chapter, parimutuel
21       betting and handicapping contests as authorized by chapter 67.16, bona fide
         business transactions valid under the law of contracts, including, but not limited to,
22       contracts for the purchase or sale at a future date of securities or commodities, and
         agreements to compensate for loss caused by the happening of chance, including,
23       but not limited to, contracts of indemnity or guarantee and life, health, or accident
         insurance.

24

RCW 9.46.0237. According to Scientific, its app involves "bona fide business transactions" because players merely pay for the privilege of entertainment. The fact that players do not know how much entertainment they will receive does not make these games any different from buying tickets to a boxing match, which could last only a few rounds or many.

Fife responds that § 9.46.0237 contains a non-exhaustive list after "bona fide business transactions valid under the law of contracts" that identifies the purchase of securities and insurance as two examples. Fife contends that, applying Washington principles of statutory interpretation, the exception should be limited to transactions similar to insurance and securities.

When construing a state statute, a federal court must apply that state's principles of statutory interpretation. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004). Washington courts view statutes using the "including but not limited to" language as unambiguously creating "an illustrative, not exhaustive, list." *State v. Joseph*, 416 P.3d 738, 741 (Wash. Ct. App. 2018). This list of specific items modifies the general term, such that the latter "will be deemed to 'incorporate those things similar in nature or comparable to the specific terms.'" *Id.* (quoting *State v. Larson*, 184 Wash. 2d 843, 849, 365 P.3d 740, 743 (2015)). To determine what constitutes a "similar" item, courts look to the "clearly stated legislative intent" behind the statute. *Id.* at 741-42.

Here, the list clearly contemplates excluding purchases of securities or other investments and insurance. Buying virtual coins is not "similar in nature" to either of these transactions because the buyer is not protecting themselves against a fortuitous risk or obtaining a stake in a company. Scientific argues that it is similar to buying a ticket to a sports event, which is obviously legal, but that does not mean that transactions of this nature are the object of this particular exception.

1    Scientific argues that "bona fide business transactions valid under the law of contracts" is

2    a broad category that unambiguously includes the sale of credits used for amusement games. In

3    support of this, Scientific points to RCW 9.46.010, which states that the Washington Gambling

4    Act seeks to "avoid restricting participation by individuals in activities and social pastimes."

5    However, the rest of this sentence limits the types of social pastimes to those that are "more for

6    amusement rather than for profit, do not maliciously affect the public, and do not breach the

7    peace."  RCW 9.46.010. While the wording is ambiguous regarding *whose* profit is at issue,

8    Scientific certainly profits from its games and Fife would argue that they have a malicious effect

9    on a portion of the public. In any case, social pastimes geared toward amusement contrast

10   sharply with insurance and securities transactions, which are clearly for profit and have nothing

11   to do with amusement. The legislative intent therefore does not support Scientific's

12   interpretation.

13          In any case, Scientific misconstrues the nature of the "transaction" at issue in this case.

14   Whereas traditional gambling consists of a single transaction (money for a chance to win),

15   Scientific's app divvies up this process between two connected transactions. Although the first

16   transaction allows a user to obtain the virtual coins, the second transaction of spending them in

17   Scientific's games is what fits the statutory definition of gambling. *See* RCW 9.46.0237

18   (defining gambling as "staking or risking something of value upon the outcome of a contest of

19   chance or a future contingent event not under the person's control or influence"). Consequently,

20   regardless of whether purchasing coins from Scientific is similar to buying securities or tickets to

21   a baseball game, buying coins and then using them to play Scientific's games is not a "bona fide

22   business transaction." *Id*.

23

24

1

**CONCLUSION**

2        For the foregoing reasons, Defendant Scientific's Motion to Dismiss (Dkt. #28) is

3   DENIED.

4        IT IS SO ORDERED.

5

6        Dated this 18th day of December, 2018.

7

8                                               Ronald B. Leighton
                                                United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24