The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DONNA REED, individually and on behalf of all others similarly situated,

        *Plaintiff,*

    v.

SCIENTIFIC GAMES CORP., a Nevada corporation,

        *Defendant.*

Case No. 2:18-cv-00565-RSL

**OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**

NOTE ON MOTION CALENDAR:
October 30, 2020

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

## TABLE OF CONTENTS

2

3

**INTRODUCTION** ........................................................................................................1

4

**BACKGROUND** ...........................................................................................................2

5

**ARGUMENT** ...............................................................................................................5

6

    **I.**   **CLICKING THROUGH THE POP-UP DID NOT CREATE AN**

7             **ENFORCEABLE CONTRACT.** ..............................................................5

8         **A. Ms. Reed's clicking through the pop-up did not manifest her assent**

            **to be bound by the Terms of Service.** ...............................................5

9

        **B. The pop-up was an improper communication device to a putative class**

10             **member under Rule 23.** .....................................................................9

11

  **II.**     **USING THE CASINO DID NOT CREATE AN ENFORCEABLE**

12          **CONTRACT.** ..........................................................................................12

13

**CONCLUSION** ..........................................................................................................16

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases:**

*Benson v. Double Down Interactive, LLC*,
  798 F. App'x 117 (9th Cir. 2020)........................................................................13

*Dasher v. RBC Bank (USA)*,
  882 F.3d 1017 (11th Cir. 2018)....................................................................15, 16

*Degidio v. Crazy Horse Saloon & Rest. Inc.*,
  880 F.3d 135 (4th Cir. 2018)............................................................................12

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*,
  268 F.3d 829 (9th Cir. 2001)..............................................................................5

*In re Perle*,
  725 F.3d 1023 (9th Cir. 2013).........................................................................13

*Kater v. Churchill Downs, Inc.*,
  886 F.3d 784 (9th Cir. 2018)...........................................................................10

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016).........................................................................12

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014)....................................................................6, 14

*Nicosia v. Amazon.com, Inc.*,
  815 F. App'x 612 (2d Cir. 2020)......................................................................13

*Russell v. Citigroup, Inc.*,
  748 F.3d 677 (6th Cir. 2014)....................................................................15, 16

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)............................................................................14

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019)............................................................................6

**United States District Court Cases:**

*Balasanyan v. Nordstrom, Inc.*,
  No. 10-cv-2671, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012)...........................12

*Chen v. D'Amico*,
  No. 16-cv-1877, 2020 WL 363354 (W.D. Wash. Jan. 22, 2020)....................8, 9

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005)............................................................9, 12

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
  298 F. Supp. 3d 1285 (N.D. Cal. 2018)............................................................14

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - iii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

*Jimenez v. Menzies Aviation Inc.*,
    No. 15-cv-02392, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ................................. 9, 12

*Kater v. Churchill Downs Inc.*,
    No. 3:15-cv-00612-RBL, 2018 WL 5734656 (W.D. Wash. Nov. 2, 2018) ..................... 12

*Kater v. Churchill Downs Inc.*,
    423 F. Supp. 3d 1055 (W.D. Wash. 2019) ............................................................. 9, 10, 11

*McKee v. Audible, Inc.*,
    No. 17-cv-1941, 2018 WL 2422582 (C.D. Cal. Apr. 6, 2018).................................. 11, 12

*Nugussie v. HMS Host N. Am.*,
    No. 16-cv-0268, 2017 WL 1250420 (W.D. Wash. Apr. 5, 2017) .................................... 11

*OConner v. Agilant Sols., Inc.*,
    444 F. Supp. 3d 593 (S.D.N.Y. 2020) ................................................................. 10, 11, 12

*Piekarski v. Amedisys Ill., LLC*,
    4 F. Supp. 3d 952 (N.D. Ill. 2013)....................................................................... 11, 12

*Robbins v. Comcast Cable Commc'ns, LLC*,
    No. 19-cv-05603, 2019 WL 4139297 (W.D. Wash. Aug. 30, 2019) .............................. 14

**Washington Supreme Court Cases:**

*Burnett v. Pagliacci Pizza, Inc.*,
    470 P.3d 486 (Wash. 2020).......................................................................................5, 6, 7

*City of Everett v. Sumstad's Estate*,
    631 P.2d 366 (Wash. 1981).........................................................................................6, 15

*Keystone Land & Dev. Co. v. Xerox Corp.*,
    94 P.3d 945 (Wash. 2004) ..............................................................................................5, 6

**Washington Court of Appeals Cases:**

*Hastings v. Unikrn, Inc.*,
    No. 79499, 2020 WL 1640250 (Wash. Ct. App. Mar. 30, 2020).......................................7, 8

*Weiss v. Lonnquist*,
    224 P.3d 787 (Wash. App. Ct. 2009) ................................................................................6

**Miscellaneous Authority:**

RCW 4.16.130 ................................................................................................................... 10

Wash. GR 14.1 ...............................................................................................................8, 9

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - iv

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

**INTRODUCTION**

2    Defendant Scientific Games has moved to compel arbitration or send this case to Nevada

3 on the basis of provisions in its Terms of Service. But Plaintiff Donna Reed never agreed to, and

4 is not bound by, Defendant's Terms. Consequently, the motion should be denied.

5    Defendant first asserts that Ms. Reed agreed to the Terms when she clicked through a

6 pop-up window that appeared one time as Ms. Reed was trying to access Defendant's "Jackpot

7 Party Casino" social casino game. But Washington law looks to the reasonable meaning of a

8 person's actions to determine whether they assented to an agreement, and the reasonable

9 interpretation of Ms. Reed's clicking through the pop-up is not that she assented to Defendant's

10 Terms. Ms. Reed was constantly forced to click through innocuous pop-ups in order to access

11 Jackpot Party Casino's slot machines—slot machines she played every day and was addicted to.

12 The fact that, on one occasion, Defendant placed another pop-up between Ms. Reed and the slot

13 machines she was addicted to (this time—uniquely—a pop-up purporting to create a binding

14 agreement) does not make it reasonable to infer that her clicking through that pop-up too

15 manifested her assent to be bound by the Terms of Service.

16    In any event, Defendant's pop-up was presented to Ms. Reed at a time when she was a

17 putative absent class member in this action. The pop-up provided zero information about the

18 pending suit, Ms. Reed's rights as a putative class member, or the real-world effect of agreeing

19 to the Terms. Furthermore, even if the pop-up had provided such information, it would have

20 presented Ms. Reed with the stark choice of giving up a bevy of valuable legal rights in order to

21 keep playing the slot machines she was addicted to (and to use the virtual chips she had already

22 paid for). Consequently, the pop-up was a misleading and coercive communication to Ms. Reed

23 and could not have formed the basis of an enforceable contract.

24    Defendant next asserts that Ms. Reed agreed to the Terms by continuing to access

25 Defendant's slot machines after learning of the existence of the Terms. But Ms. Reed had no

26 actual knowledge of the Terms (nor, importantly, that continuing to play Defendant's slot

27 machines would purportedly manifest her assent to those Terms). Nor did Ms. Reed gain

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  constructive knowledge of those things from any of the sources pointed to by Defendant: her

2  counsel's work in other related social casino cases, a hyperlink that is purportedly visible at the

3  bottom of Jackpot Party Casino's home screen, and a footnote in one of Defendant's briefs.

4  Furthermore, as with the pop-up, Ms. Reed's continued access of Defendant's slot machines

5  cannot reasonably be read as manifesting her assent to Defendant's Terms, especially because

6  doing so would also raise an inference that Defendant made an offer directly to Ms. Reed—in an

7  effort to alter her rights in pending litigation—at a time when she was a represented by counsel.

8      Simply put, the Terms of Service are unenforceable as to Ms. Reed, and the motion to

9  compel arbitration or transfer venue should be denied.

10                              **BACKGROUND**

11     Defendant operates Jackpot Party Casino and other similar social casinos. *See* Dkt. 78 ¶¶

12  1-2. Jackpot Party Casino, and the other social casinos, are filled with virtual slot machines. *See*

13  *id.* Ms. Reed began playing Jackpot Party Casino in 2013 and found it immediately addictive.

14  *See* Declaration of Donna Reed ("Reed Decl.") ¶¶ 1-2. She played Jackpot Party Casino seven

15  days a week for five to six hours per day, and estimates that she has lost over $30,000 playing

16  Defendant's virtual slot machines. *Id.* ¶ 2.

17     In 2018, Sheryl Fife initiated this action alleging that Defendant's social casinos

18  constitute unlawful gambling under Washington law. *See* Dkt. 1. Ms. Fife sought recovery of

19  gambling losses on behalf of "[a]ll persons in the State of Washington who purchased and lost

20  chips at Defendant's online casino games." *Id.* ¶ 32. As a Washingtonian who lost significant

21  amounts of money at the Jackpot Party Casino, Ms. Reed was a member of this putative class.

22     Defendant asserts that, in 2019, it updated its Terms of Service (the "Terms") and

23  presented all Jackpot Party Casino users with the pop-up shown in **<u>Figure 1</u>** below:

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

**Figure 1**



14  *See* Dkt. 83-2. According to Defendant, this "Hey Jackpot-Partiers!" pop-up was displayed

15  immediately when a player opened Jackpot Party Casino. *See* Dkt. 82 at 3.

16        Ms. Reed does not recall ever seeing this pop-up. Reed Decl. ¶¶ 4-5. That said, Ms. Reed

17  got "tons of pop-up messages," in Jackpot Party Casino including "often as soon as [she] opened

18  the game." *Id.* ¶ 3. Ms. Reed "never paid attention to these pop-ups and just clicked through

19  them so [she] could get started playing the slots as soon as possible." *Id.* Unlike the "Hey

20  Jackpot-Partiers!" pop-up, none of the other barrages of routine pop-ups that were shown to Ms.

21  Reed purported to bind users to a Terms agreement with Defendant. By way of example, when

22  Ms. Reed's counsel recently attempted to access Jackpot Party Casino, they were forced to click

23  two big green buttons—replete with one-word imperative comments—before being able to enter

24  the game. *See* **Figure 2** and **Figure 3**.

25

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

**Figure 2**

2
3
4
5
6
7
8
9
10
11
12



13

14

**Figure 3**

15
16
17
18
19
20
21
22
23
24
25



26    *See* Declaration of Roger Perlstadt ("Perlstadt Decl.") ¶ 3.

27

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Ms. Reed stopped playing Jackpot Party Casino in August 2020. *See* Dkt. 82 at 6. Before then, she was unaware that the Terms existed or that her continued use of the game would be viewed by Defendant as her assent to Defendant's Terms. *See* Reed Decl. ¶ 6.

In May 2020, Ms. Reed sought to be substituted in as the named plaintiff in this action, (*see* Dkt. 52), a request that Judge Leighton ultimately granted (*see* Dkt. 77). A few weeks later, Defendant filed its motion to compel arbitration or transfer venue. *See* Dkt. 82.

## ARGUMENT

The motion to compel arbitration or transfer venue should be denied. It is premised entirely on Jackpot Party Casino's Terms, but neither Ms. Reed's purported clicking through the "Hey Jackpot-Partiers!" pop-up nor her continued use of Defendant's virtual slot machines, after purportedly obtaining knowledge of the Terms, created an enforceable contract.

## I.   CLICKING THROUGH THE POP-UP DID NOT CREATE AN ENFORCEABLE CONTRACT.

Clicking through Defendant's pop-up did not bind Ms. Reed to Defendant's Terms. Defendant has failed to establish that the most reasonable reading of Ms. Reed's clicking through the pop-up was a manifestation of assent to be bound by the Terms rather than, say, an attempt to access the slot machines she was addicted to as quickly as possible by clicking through whatever—normally innocuous—pop-ups that appeared. And in any case, the pop-up was misleading and coercive—and thus improper—communication to Ms. Reed while she was an absent putative class member, rendering any supposed agreement resulting from her clicking through it unenforceable.

### A.   Ms. Reed's clicking through the pop-up did not manifest her assent to be bound by the Terms of Service.

"Mutual assent is required for the formation of a valid contract." *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 491 (Wash. 2020).[1] Washington follows the "objective manifestation"

---

[1]   Washington law applies here, as the Court is sitting in diversity and no party proposes the application of any other state's law. *See DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 845 & n.14 (9th Cir. 2001).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    test for contracts. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004).

2    "Accordingly, for a contract to form, the parties must objectively manifest their mutual assent."

3    *Id.* In other words, "[m]utual assent is gleaned from outward manifestations and circumstances

4    surrounding the transaction." *Burnett*, 470 P.3d at 492. As the party asserting the existence of an

5    agreement, Defendant has the burden of establishing Ms. Reed's assent to be bound by the

6    Terms of Service. *Weiss v. Lonnquist*, 224 P.3d 787, 792 (Wash. App. Ct. 2009).

7           Whether an individual's actions manifest their assent to online terms of service depends

8    on context, including "the content and overall design of the app." *Wilson v. Huuuge, Inc.*, 944

9    F.3d 1212, 1220 (9th Cir. 2019) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177

10   (9th Cir. 2014)). Courts also determine whether mutual assent exists by examining "the

11   circumstances surrounding a transaction" informed by "a course of dealing between the parties."

12   *Weiss*, 224 P.3d at 792. Here, Defendant points to the single "Hey Jackpot-Partiers!" pop-up

13   screen with the big green button at the bottom that users must click in order to continue on to the

14   Jackpot Party Casino. *See* Dkt. 82 at 4. What Defendant fails to mention is all the other routine

15   pop-ups with big green buttons users must click through in Jackpot Party Casino that *don't*

16   purport to bind them to any terms. *See supra* **Figure 2** (big green "Spin!" button), **Figure 3** ("big

17   green "Collect!") button.

18          The fact that one day, when Ms. Reed tried to open Jackpot Party Casino, *another* pop-up

19   with *another* green button to click through appeared on the screen doesn't establish that clicking

20   *that* particular green button (as opposed to the other green buttons on the other pop-up screens

21   she encountered daily) manifested her assent to be bound by the Terms.

22          When assessing purported "outward manifestations of intent," this Court should "impute

23   an intention corresponding to the reasonable meaning of a person's words and acts." *City of

24   Everett v. Sumstad's Estate*, 631 P.2d 366, 367 (Wash. 1981). Here, the reasonable meaning of

25   Ms. Reed's clicking through the "Hey Jackpot-Partiers!" pop-up is not that she intended to assent

26   to the Terms or enter into any other agreement with Defendant, but that she intended to get to the

27   slot machines—to which she was addicted—as quickly as possible. In light of the design and

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

content of the "Hey Jackpot-Partiers!" pop-up and the entire course of dealing between Ms. Reed and Defendant—a course in which Ms. Reed was constantly presented with innocuous pop-ups with big green buttons containing one-word imperative commands that she needed to click through before entering the Casino—Ms. Reed's clicking the green button on the one-off "Hey Jackpot-Partiers!" pop-up simply does not lend itself to a reasonable imputation of assent to the Terms.

Washington courts take mutual assent seriously, especially when—as here—the purported terms of service are not set forth in the place where the assent is purportedly manifested, but in a referenced document available elsewhere. For example, in *Burnett*, the Washington Supreme Court found that, even though an employee signed an employment agreement stating that the employee "will learn and comply with the rules and policies outlined in our [employee handbook]," and the employee handbook contained an arbitration clause, the employee did not manifest assent to the arbitration clause. 470 P.3d at 489. As the court explained, "incorporation by reference does not, in itself, establish mutual assent to the terms being incorporated." *Id.* at 492. The fact that the employee in *Burnett* signed an employment agreement referencing the handbook didn't mean that he had agreed to provisions in the handbook that were not mentioned in the employment agreement itself. *Id.* ("Even if the Court of Appeals is correct that the mention of the handbook in the [employment agreement] effectively incorporates the handbook by reference into the [employment agreement], that does not mean there was an effective arbitration *agreement* between [employee] and [employer]. [Employee] still had no knowledge of the arbitration provision terms when he signed the [employment agreement].") Under *Burnett*, clicking "Accept!" on the "Hey Jackpot-Partiers!" pop-up here doesn't manifest assent to provisions—like, for example, a forum selection clause—included in the separate Terms document but not in the pop-up.

Similarly, the Washington Court of Appeals has held that a consumer did not manifest assent to a defendant's terms of service, even where, before continuing with an online purchase, the consumer had to click a checkbox next to an affirmation statement reading "I have read and

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   understood [defendant's] Terms of Service and the Privacy Policy, and hereby agree to them."

2   *Hastings v. Unikrn, Inc.*, No. 79499, 2020 WL 1640250, at *1-2 (Wash. Ct. App. Mar. 30, 2020)

3   (unpublished). In *Hastings*, the court found two problems, each of which independently negated

4   the plaintiff's purported assent to the defendant's online terms of service. First, the court found

5   that even though the words "Terms of Service" in the affirmation statement was a hyperlink

6   appearing in blue text, there was no reasonable notice about the presence of a link to the terms,

7   depriving the plaintiff of any meaningful opportunity to read the terms or assent thereto. *Id.* at

8   *6-7. Second, the court found that the reference to the terms of service in the affirmation

9   statement did not match the title of the terms of service in the linked document, creating

10  ambiguity as to what, if anything, reasonable users were agreeing to when they clicked the

11  checkbox next to the affirmation statement. *Id.* at *7-8.

12          Both of these problems are present here. First, the "Terms of Service" button on the "Hey

13  Jackpot-Partiers!" pop-up is no more obviously a link than the blue-colored "Terms of Service"

14  text in the affirmation statement in *Hastings*. While blue text on a webpage may seem common

15  to some in 2020, the lower court in *Hastings*—affirmed by the Washington appellate court—held

16  that that blue text on a webpage did not alone provide notice to a reasonable user that the text

17  was a hyperlink. And Washington law governs the contract formation question here. Second, like

18  the mis-matched terms of service titles in *Hastings*, the pop-up here creates some ambiguity as to

19  exactly which Terms are being agreed to. The pop-up states that "[o]ur . . . Terms of Service

20  have changed" and refers to "updated versions of these important policies," (Dkt. 83-2), but the

21  Terms themselves (as well as the not-obviously-a-link Terms of Service button in the pop-up)

22  fail to identify whether they are the old or the updated terms (Dkt. 83-1) (undated document

23  labeled simply "Terms of Service").

24          Defendant will no doubt point out that *Hastings* is an unpublished decision and that the

25  court there expressly cautioned other courts to "exercise great care if asked to apply the result

26  reached herein to any other dispute." 2020 WL 1640250, at *1. But litigants and courts are free

27  to cite and rely on unpublished Washington decisions as persuasive, *see Chen v. D'Amico*, No.

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1  16-cv-1877, 2020 WL 363354, at *10 n.11 (W.D. Wash. Jan. 22, 2020) (citing Wash. GR

2  14.1(a)), and the point here is not that this case is on all fours with *Hastings* (or *Burnett*). The

3  point is simply that, under Washington law, assertions that a party has assented to online terms of

4  service should be evaluated critically, looking closely at the details of the purported agreement

5  and the context in which it was purportedly entered. Here, a reasonable assessment of the content

6  and design of the pop-up, as well as the context in which it was presented (*i.e.*, at the threshold of

7  an addictive game in a manner similar to innocuous pop-ups presented every other day), do not

8  establish that Ms. Reed assented to Defendant's Terms by clicking through a pop-up.

9

10        **B.**     **The pop-up was an improper communication to a putative class member under Rule 23.**

11        In any event, Defendant's pop-up was a misleading and coercive communication to Ms.

12  Reed—made at a time when she was an absent putative class member. This alone renders any

13  purported assent to the Terms unenforceable, as the pop-up impermissibly infringes on the

14  Court's Rule 23 management of the litigation.

15        "Federal Rule of Civil Procedure 23(d) provides courts with considerable discretion in

16  regulating defendant communications with putative class members to prevent abuse." *Jimenez v.*

17  *Menzies Aviation Inc.*, No. 15-cv-02392, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015).

18  "Many courts have found that a defendant's attempt to foist a new arbitration provision on

19  putative class members is an improper communication." *Kater v. Churchill Downs Inc.*, 423 F.

20  Supp. 3d 1055, 1062 (W.D. Wash. 2019); *see also In re Currency Conversion Fee Antitrust*

21  *Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("[W]hen a defendant contacts putative class

22  members for the purpose of altering the status of a pending litigation, such communication is

23  improper without judicial authorization."). In determining whether communications with a

24  putative class member are improper, courts focus on (1) "the potential to mislead and whether

25  putative class members are at risk of forfeiting their rights without really knowing what they

26  are," and (2) whether "they coerce putative class members by exploiting a dependent relationship

27  or giving no realistic opportunity to opt out of the defendant's new terms." *Kater*, 423 F. Supp.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

3d at 1062. Here, Defendant's pop-up did both.

First, the pop-up was misleading and encouraged Ms. Reed to forfeit her rights without her really knowing what they were. A putative class member who agrees to the Terms risks losing significant benefits associated with this action. For example, the Terms include, among other things, a choice-of-law clause selecting Nevada law (Dkt. 83-1 § 20); a forum selection clause selecting Clark County, Nevada (*id.*); an arbitration clause (selecting a venue unbound by the Ninth Circuit's Kater decision) (*id.* § 19); a class action and jury waiver (*id.* § 19.6) (forcing absent class member to individually retain counsel); and a one-year contractual limitations period (substantially limiting recoverable damages) (*id.* § 20).

Not only would the arbitration clause, the class action and jury waiver, and the forum selection clause prevent a putative class member bound by the Terms from participating in this action, the choice-of-law clause and contractual limitations period risk the loss of other significant rights as well. The Nevada choice-of-law clause would put at risk a putative class member's ability to rely on Washington law to seek recovery of their gambling losses, including the Ninth Circuit's favorable interpretation of that law in *Kater*. *See Kater v. Churchill Downs, Inc.*, 886 F.3d 784 (9th Cir. 2018) (finding similar online casino to constitute illegal gambling under Washington law and reversing dismissal of state law claims seeking recovery of gambling losses). The one-year contractual limitations period risks a putative class member forfeiting claims for years of losses, given that if a class is certified, they could seek recovery of losses spanning back to at least 2016, two years before this suit was originally filed. *See* RCW 4.16.130 (two-year catchall statute of limitations).

By failing to even mention this lawsuit, let alone inform Ms. Reed of her rights as a putative class member and "explain the stakes of clicking ['Accept!']," the pop up was misleading. *Kater*, 423 F. Supp. 3d at 1063 (finding online casino pop-ups directed toward putative class members misleading where, even though they mentioned pending class action lawsuits, "they fail[ed] to meaningfully inform users about their potential rights"); *see also OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 603 (S.D.N.Y. 2020) ("Defendant's

communications with putative plaintiffs were improper and misleading. The Arbitration

Agreement did not disclose that by signing the Arbitration Agreements, putative plaintiffs would

lose their right to participate in this lawsuit. ASI management made no effort to communicate

this fact to its employees."). The pop-up did not, for example, "notif[y] [Ms. Reed] of the

[relevant statutes], this lawsuit (including the claims asserted, the relief sought, and that [she]

would be part of the class if certified), how to contact plaintiff['s] counsel . . . [or] offer[] to

provide [her] a copy of the complaint." *Nugussie v. HMS Host N. Am.*, No. 16-cv-0268, 2017

WL 1250420, at *2 (W.D. Wash. Apr. 5, 2017).

In addition to being misleading, the pop-up was also coercive. As Judge Leighton

explained while discussing a similar pop-up in one of the related gambling cases:

> The pop-up message presents putative class members with a stark choice: relinquish
> your class action rights and continue playing or maintain your rights and forfeit
> access to [defendant's] games. This ultimatum is made more coercive by the
> addictive nature of [defendant's] games and the fact that many players have already
> purchased chips that can only be accessed by agreeing to the terms. . . . With such
> pressures at play, the pop-up, and revised Terms, are clearly intended to steer
> putative class members away from participating in these cases.

*Kater*, 423 F. Supp. 3d at 1062-63. As in *Kater*, to the extent a putative class member like Ms.

Reed even noticed the pop-up, it presented her with the "stark choice" of giving up her rights in

this action in order to continue playing Defendant's slot machines or maintaining her rights and

forfeiting access to the slot machines, including any virtual chips she had already purchased. *Id.*;

*see also McKee v. Audible, Inc.*, No. 17-cv-1941, 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6,

2018) (finding arbitration offer communicated during pending litigation "inherently coercive"

because it forced putative class members to end an ongoing business relationship with defendant

and forfeit paid-for credits in order to retain right to participate in class action); *Piekarski v.

Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) ("[W]here there is an ongoing

business or employment relationship between the class and the class opponent, communications

may be inherently coercive."). In fact, the pop-up here was even *more* coercive than the pop-up

in *Kater*. The terms of service at issue in *Kater* at least provided a method of opting-out of the

defendant's arbitration clause if one dug deep enough into the terms to find it. While Judge

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1   Leighton found that the *Kater* pop-up's failure to mention the opt-out provision rendered the opt-

2   out provision insufficient to negate the coercion, the Terms here don't include an opt-out

3   provision at all. *See generally* Dkt. 83-1.

4          When a defendant makes a misleading and coercive communication to a putative class

5   member and thereby attempts to bind them to a rights-altering agreement, courts do not hesitate

6   to exercise their Rule 23 powers in finding the agreement unenforceable.[2] *See, e.g.*, *Jimenez*,

7   2015 WL 4914727, at *5 ("[T]he ADR Policy is unenforceable because the policy limited class

8   members' rights and the manner in which Menzies issued the policy—not informing Mijos and

9   other putative class members of the pending litigation, not explaining the consequences of

10  agreeing to the policy, and not providing an opt-out procedure—constituted improper class

11  communication."); *Currency Conversion Fee*, 361 F. Supp. 2d at 254; *Balasanyan v. Nordstrom,*

12  *Inc.*, No. 10-cv-2671, 2012 WL 760566, at *3-4 (S.D. Cal. Mar. 8, 2012); *OConner*, 444 F.

13  Supp. 3d at 603; *McKee*, 2018 WL 2422582, at *8; *Piekarski*, 4 F. Supp. 3d at 956; *Degidio v.*

14  *Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 138, 144 (4th Cir. 2018) (affirming district

15  court's refusal to enforce arbitration agreements and class waivers misleadingly and coercively

16  imposed on putative class members).

17         This Court should do the same. The "Hey Jackpot-Partiers!" pop-up was a misleading

18  and coercive communication to Ms. Reed affecting her rights in this litigation that was presented

19  to her at the time she was a putative class member. Thus, without regard to whether clicking

20  through the pop-up was a manifestation of assent, the Terms are in any event unenforceable.

21  **II.   USING THE CASINO DID NOT CREATE AN ENFORCEABLE CONTRACT.**

22         Defendant also argues that Ms. Reed assented to the Terms by continuing to play Jackpot

---

23  [2]     Whether the pop-up was a misleading and coercive communication improperly infringing on the Court's
24  Rule 23 management of the litigation is a gateway question of arbitrability, which the Terms did not "clearly and
    unmistakably" delegate to an arbitrator. *See Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016); *Kater v.*
25  *Churchill Downs Inc.*, No. 3:15-cv-00612-RBL, 2018 WL 5734656, at *3 (W.D. Wash. Nov. 2, 2018). Nor could
    they have, as this issue is squarely outside the purview of an arbitrator's expertise. *See Kater*, 2018 WL 5734656, at
26  *3 ("Consequently, [Defendant's] Terms of Use do not rebut the presumption that the court should apply its
    expertise to determine [a gateway arbitrability issue]"); *accord Martin*, 829 F.3d at 1123 n.3 (9th Cir. 2016) (noting
27  arbitrator lacks expertise regarding how to regulate conduct occurring "in front of the district court").

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   Party Casino after learning of the Terms' existence. That is wrong.

2         First, Defendant has failed to establish that Ms. Reed had knowledge of the Terms'

3   existence while continuing to play Jackpot Party Casino. And the evidence in the record shows

4   that she did not. *See* Reed Decl. ¶ 6 (testifying that Reed first learned of the Terms after she had

5   stopped playing). Defendant does not even try to show actual knowledge, asserting instead a

6   number of ways in which Ms. Reed purportedly gained constructive knowledge of the Terms: the

7   "Hey Jackpot-Partiers!" pop-up, her counsel's experience in other gambling cases, a hyperlink at

8   the bottom of the Casino screen, and a footnote in one of its briefs.

9         While the pop-up fails for the numerous reasons discussed above, Defendant's

10   constructive knowledge arguments similarly fall short. First, knowledge gained by an attorney in

11   one case cannot be imputed to that attorney's clients in other cases. *In re Perle*, 725 F.3d 1023,

12   1028 (9th Cir. 2013) ("[Debtor] has identified no case, nor are we able to find one, that imputes

13   to a client knowledge that his lawyer gained while representing a *different* client. In fact, the

14   authority is to the contrary."). The hyperlink at the bottom of the Casino screen is likewise a non-

15   starter for establishing Ms. Reed's knowledge. *See, e.g.*, *Benson v. Double Down Interactive,*

16   *LLC*, 798 F. App'x 117, 119 & n.3 (9th Cir. 2020) (finding hyperlink to terms of service did not

17   provide constructive notice to users where it was visible only after scrolling to the bottom of the

18   window, was obscured among brightly colored icons, was set out in typeface substantially

19   smaller than other text on the screen, and did not clearly inform users that they were bound by

20   the terms).[3] And Defendant's reliance on *Nicosia* to argue that Ms. Reed had knowledge of the

21   Terms through a footnote in a brief Defendant filed is unavailing in light of her expressed

22   disavowal of such knowledge. *Compare Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d

23   Cir. 2020) ("Nicosia does not dispute that he became aware of the existence of the arbitration

24   _____

25   [3]    Though the screenshot proffered by Defendant shows the Terms of Service hyperlink at the bottom of the Jackpot Party Casino screen (*See* Dkt. 82 at 5), this is not how the screen appears on all devices. For example, when

26   one of Plaintiff's attorneys opened the Jackpot Party Casino on his computer, the Terms of Service hyperlink was not visible without scrolling down, nor was there any signal that a user *should* scroll

27   down. *See* Perlstadt Decl. ¶ 4. That was true regardless of whether the browser window was maximized or not. *Id.*

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1   clause through this litigation. Nor does Nicosia dispute that he thereafter continued to avail

2   himself of Amazon's services by making purchases through its website.") *with* (Reed Decl. ¶ 6)

3   (testifying that she was unaware of the Terms until after she had stopped using the Casino).

4        Second, even if Ms. Reed had actual or constructive knowledge of the existence of the

5   Terms before she stopped using the Casino, that knowledge alone would not be enough. In order

6   to be bound by the Terms, Ms. Reed needed to have had knowledge not just of the *existence* of

7   the Terms, but knowledge that her continued use of Jackpot Party Casino would manifest her

8   assent to those terms. *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices*

9   *Litig.*, 298 F. Supp. 3d 1285, 1293-94 (N.D. Cal. 2018) ("This Court . . . must determine whether

10  a reasonable person in each Plaintiff's position would have known about the arbitration provision

11  *and known that using the phone constituted acceptance of that provision*.") (emphasis added);

12  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012) ("Ultimately . . . the touchstone

13  of the analysis is whether reasonable people in the position of the parties would have known

14  about the terms *and the conduct that would be required to assent to them*.") (emphasis added).

15  Defendant has presented no evidence that Ms. Reed, even assuming she knew about the Terms,

16  knew that her continued use of the Casino would manifest her assent to be bound to those Terms.

17  *Cf.* Reed Decl. ¶ 6 (testifying that she didn't know continued use might be considered accepting

18  the Terms). While Defendant points to language in the Terms themselves stating that "[y]our use

19  of the Platform constitutes agreement to these Terms" (Dkt. 82 at 14; Dkt. 83-1 at ECF 2), "this

20  is unhelpful when the [platform] itself does not inform [users] that this is the case." *Robbins v.*

21  *Comcast Cable Commc'ns, LLC*, No. 19-cv-05603, 2019 WL 4139297, at *5 (W.D. Wash. Aug.

22  30, 2019); *see also Nguyen*, 763 F.3d at 1173-74 (affirming district court's holding that terms of

23  use were not binding where notice of method of manifesting assent to those terms was found

24  only within the terms themselves).

25       Finally, Defendant's argument that Ms. Reed manifested her assent to be bound by the

26  Terms by continuing to Play Jackpot Party Casino after purportedly learning of the Terms'

27  existence shares a fault with Defendant's argument that Ms. Reed did so by clicking through the

OPPOSITION TO MOTION
TO COMPEL ARBITRATION - 14

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    "Hey Jackpot-Partiers!" pop-up: it ascribes unreasonable meaning to the parties' conduct. *See*

2    *City of Everett*, 631 P.2d at 367 (when assessing manifestation of assent to an agreement, court

3    should "impute an intention corresponding to the reasonable meaning of a person's words and

4    acts"). In Defendant's view, (1) it made an offer to Ms. Reed—let's arbitrate this dispute or

5    move it to Nevada—not through Ms. Reed's by-then-hired counsel but instead through a

6    hyperlink in the app, and (2) Ms. Reed accepted that offer (again, not through Ms. Reed's

7    counsel but by simply continuing to access Jackpot Party Casino), all while continuing to litigate

8    this case. That position is untenable, and has been rejected by multiple courts.

9           For example, in *Dasher v. RBC Bank (USA)*, 882 F.3d 1017 (11th Cir. 2018), the

10   defendant bank added an arbitration clause to its account holder agreement during ongoing

11   litigation involving overdraft charges. The bank sought to compel arbitration, arguing that the

12   plaintiff's continued use of his account without opting out of the arbitration agreement

13   manifested his assent to the agreement. The Eleventh Circuit rejected the bank's argument,

14   holding instead that the plaintiff had not assented to the arbitration agreement for two reasons:

15          First, [the bank] distributed the proposed, purportedly retroactive and litigation-
            ending amendment directly to [plaintiff], even though [the bank] knew [plaintiff]
16          was an adverse litigant actively represented by counsel as to the very issues raised
            in the amendment. Second, at the time [plaintiff] failed to opt out of the proposed
17          amendment, he was forcefully and consistently resisting arbitration of the pending
            litigation. At most, then, [the bank] demonstrated inconsistent communications
18          from [plaintiff] (his implicit acceptance by failing to opt out and his express
            resistance to arbitration) coupled with a failure on [the bank's] part to communicate
19          through counsel. In this narrow context, we cannot overlook [the bank's] failure to
            direct its purportedly court-evicting proposed amendment through known litigation
20          counsel.

21   *Id.* at 1021-22;[4] *see also Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014)

22   ("[Plaintiff's] behavior—signing the contract [containing an arbitration clause] without

23

24

25   ──────────────
     [4]      *Dasher* was decided under North Carolina law, which, like Washington law, looks to the parties' objective
26   manifestations of assent to determine contract formation. 882 F.3d at 1023 ("Looking to North Carolina [law], we
     find nothing unorthodox in that state's analysis of contract law. In the absence of a wholly integrated and signed
27   document spelling out the parties' agreement, we determine the parties' intent by examining what the parties
     communicated to one another through words and actions.").

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1     consulting counsel and carrying on with the lawsuit as before—would make little sense if

2     [plaintiff] understood the contract to cover the case at hand.").

3         In fact, if this Court were to adopt Defendant's position, it would give rise to serious

4     ethical questions involving communications with represented parties. *See Dasher*, 882 F.3d at

5     1023-24 (holding that the "risks of communicating directly with the opposing party as to a

6     purportedly court-evicting [agreement] outside the presence of opposing counsel" were relevant

7     to determining whether the parties had manifested their assent to the agreement). Like the Sixth

8     Circuit in *Russell*, "we do not mean to suggest that [Defendant's] in-house counsel violated the

9     rules of ethics. . . . But we do mean to ask: Did [Defendant] expect the [Terms of Service] to bear

10    a meaning that would even raise these questions?" 748 F.3d at 680. Simply put, it is not

11    reasonable to impute Ms. Reed's assent to send this case to arbitration or to Nevada by her

12    continued use of Jackpot Party Casino. *See Dasher*, 882 F.3d at 1023 ("Any communication

13    must be understood in context, not viewed in the abstract.").

14                        **CONCLUSION**

15         Because the Terms are not enforceable against Ms. Reed, the motion to compel

16    arbitration or transfer venue should be denied.

17

18    Dated: October 12, 2020             Respectfully submitted,

19

20                           **DONNA REED,** individually and on behalf of all
                             others similarly situated,

21

22                           By: /s/ Todd Logan

23                           Rafey S. Balabanian*
                          rbalabanian@edelson.com

24                           Todd Logan*
                          tlogan@edelson.com

25                           Brandt Silver-Korn
                          bsilverkorn@edelson.com*

26                           EDELSON PC
                          123 Townsend Street, Suite 100

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

San Francisco, California 94107
Tel: 415.212.9300 / Fax: 415.373.9435


By: /s/ Cecily C. Shiel

Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Tel: 206.682.5600

*Admitted *pro hac vice*


*Attorneys for Plaintiff*

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992