THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONNA REED, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SCIENTIFIC GAMES CORP.,

Defendant.

No. 2:18-cv-00565-RSL

**DEFENDANT SCIENTIFIC GAMES' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**

NOTED ON MOTION CALENDAR:
October 30, 2020

ORAL ARGUMENT REQUESTED

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

# TABLE OF CONTENTS

3

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 2

A.    Reed Agreed to the Terms by Clicking "Accept!" ................................................ 2

1.    Reed's click-through constitutes acceptance ............................................ 2

2.    Reed's inattention to the pop-up is irrelevant to enforceability................. 4

3.    Rule 23(d) does not nullify Reed's click-through acceptance .................. 6

a.    Rule 23(d) authorizes procedural relief in limited
circumstances .......................................................................... 6

b.    The district court decisions that Reed cites should not be
followed and, at any rate, do not apply ......................................... 7

c.    Even if Rule 23(d) applies, the Court should not invalidate
Reed's agreement to arbitrate future claims ............................... 10

d.    Rule 23(d) does not extend to the forum-selection clause,
so the Court must transfer any remaining claims to the
District of Nevada ...................................................................... 11

B.    Reed Agreed to the Terms by Continuing to Play Jackpot Party Casino ............ 11

III.  CONCLUSION............................................................................................................. 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**TABLE OF AUTHORITIES**

2

3

**Page(s)**

4

**CASES**

5

6

*Burnett v. Pagliacci Pizza, Inc.*,
    470 P.3d 486 (Wash. 2020)..................................................................................2, 3, 4

7

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 (S.D.N.Y. 2020)..................................................................................7

8

9

*City of Everett v. Sumstad's Estate*,
    631 P.2d 366 (Wash. 1981)..................................................................................5

10

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) ..................................................................................9

11

12

*Degidio v. Crazy Horse Saloon & Rest. Inc.*,
    880 F.3d 135 (4th Cir. 2018) ..................................................................................7

13

14

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)..................................................................................7, 8, 10

15

16

*Gutierrez v. FriendFinder Networks Inc.*,
    No. 18-CV-05918-BLF, 2019 WL 1974900 (N.D. Cal. May 3, 2019) ..................................12

17

*Harbers v. Eddie Bauer, LLC*,
    No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ......................................4

18

19

*Hastings v. Unikrn, Inc.*,
    12 Wash. App. 2d 1072, 2020 WL 1640250 (Wash. Ct. App. Mar. 30, 2020)
    (unpublished) ..................................................................................2, 3, 4, 11

20

21

*Hill v. Dep't of Labor & Indus.*,
    580 P.2d 636 (Wash. 1978)..................................................................................12

22

23

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005)..................................................................................10

24

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ..................................................................................12

25

26

*In re Wyze Data Incident Litig.*,
    No. C20-0282-JCC, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020)..............................2, 3, 4

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kater v. Churchill Downs, Inc.*,
    423 F. Supp. 3d 1055 (W.D. Wash. 2019)..........................................................................9, 10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017).................................................................................................8

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ...............................................................................11

*Munning v. Nordstrom, Inc.*,
    No. C19-1810RSL, 2020 WL 1528477 (W.D. Wash. Mar. 31, 2020) ......................................4

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ....................................................................................12

*Nicosia v. Amazon.com, Inc.*,
    815 F. App'x 612 (2d Cir. 2020) ................................................................................11

*Nugussie v. HMS Host N. Am.*,
    No. C16-0268RSL, 2017 WL 1250420 (W.D. Wash. Apr. 5, 2017) ....................................6, 9

*O'Connor v. Uber Techs., Inc.*,
    No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ........................................7

*Reichert v. Rapid Invs., Inc.*,
    --- F. App'x ---, 2020 WL 6158307 (9th Cir. Oct. 21, 2020) .....................................................4

*Robbins v. Comcast Cable Commc'ns, LLC*,
    No. 3:19-CV-05603-RBL, 2019 WL 4139297 (W.D. Wash. Aug. 30, 2019)........................12

*Russell v. Citigroup, Inc.*,
    748 F.3d 677 (6th Cir. 2014) .......................................................................................9

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)........................................................................................12

*Wang v. Chinese Daily News, Inc.*,
    623 F.3d 743 (9th Cir. 2010) ...............................................................................1, 7, 8

*Weimin Chen v. Sierra Trading Post, Inc.*,
    No. 2:18-CV-1581-RAJ, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ..........................4, 6

SCIENTIFIC GAMES' MOTION TO
COMPEL ARBITRATION OR TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Weiss v. Lonnquist*,
    224 P.3d 787 (Wash. Ct. App. 2009) ...................................................................................5

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) ...............................................................................3, 4, 5

**STATUTES AND RULES**

Federal Arbitration Act ...............................................................................................1, 8

Rules Enabling Act .............................................................................................................8

Fed. R. Civ. P. 23 ...................................................................................................... passim

Wash. RPC 4.2 .................................................................................................................10

**OTHER AUTHORITIES**

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445 (2007) ...............................9

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ........................................................................................6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## I.   INTRODUCTION

2      Last year, Plaintiff Donna Reed received a pop-up that alerted her to important updates to

3   the Jackpot Party Casino Terms of Service, including to "dispute resolution." Reed received a

4   clear choice: she could accept the terms and conditions and continue playing, or she could

5   decline and stop using the game. Reed chose to continue playing the game pursuant to the

6   revised Terms, which included a clear arbitration provision and a forum-selection clause.

7      Reed does not dispute that she clicked the button to "Accept!" the Terms. Instead, she

8   claims she did not read the pop-up. That is an internet-era retread of a long-rejected argument:

9   failing to read a contract is not a defense to enforcement.

10      Alternatively, Reed asks the Court to interpret Federal Rule of Civil Procedure 23(d) to

11   invalidate her click-through acceptance. Rule 23(d) itself does not support Reed's position, nor

12   does *Wang*, the leading Ninth Circuit precedent. The district court decisions on which Reed

13   relies do not supply the support she needs, and applying them as she urges would violate the

14   Rules Enabling Act's prohibition against interpreting the Federal Rules to "abridge, enlarge, or

15   modify any substantive right"—here, the Federal Arbitration Act.

16      Reed also ignores that she played the game after receiving the Terms. That continued

17   action manifested her agreement and provides the Court an alternative basis to enforce the

18   arbitration provision without consideration of Reed's Rule 23(d) arguments.

19      Finally, Reed argues that all of her claims belong in the class action. Although she does

20   not address them separately, this apparently includes claims that are based on her use of the

21   game after she received and accepted the Terms (as opposed to claims based on her use of the

22   game before that date and that were the subject of the ongoing class action). There is no basis for

23   this argument because there can be no question that Reed agreed to arbitrate all claims that

24   accrued *after* she clicked accept and agreed to the Terms.

25      The Court should enforce the Terms and either compel arbitration or transfer the case to

26   Nevada.

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## II.   ARGUMENT

2   Reed agreed to the Terms in two ways: by clicking through the pop-up and then by

3   continuing to play Jackpot Party Casino.

4   **A.     Reed Agreed to the Terms by Clicking "Accept!"**

5       **1.      Reed's click-through constitutes acceptance.**

6   Reed claims she did not read and does not remember the pop-up. But she does not (and

7   cannot) dispute that she received it and clicked "Accept!" Lee Decl., Dkt. 83, ¶¶ 3-6, 8, Ex. B.

8   She did that, and needed to do that, in order to continue playing Jackpot Party Casino. *Id.* ¶¶ 9,

9   13. Myriad cases confirm that clicking "Accept!" constitutes binding acceptance. *See* Mot., Dkt.

10  82, at 9-12 (collecting cases). As a judge in this District explained just last week in a decision

11  compelling arbitration based on a "clickwrap" agreement nearly identical to the one at hand, "a

12  failure to recall [agreeing to arbitration] is not a sufficient basis to assert that an otherwise valid

13  agreement is unenforceable." *In re Wyze Data Incident Litig.*, No. C20-0282-JCC, 2020 WL

14  6202724, at *2 & n.4 (W.D. Wash. Oct. 22, 2020) (compelling arbitration and dismissing case).

15  Reed nonetheless attempts to nullify her agreement based on two other recent decisions:

16  *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 488 (Wash. 2020), and *Hastings v. Unikrn, Inc.*,

17  12 Wash. App. 2d 1072, 2020 WL 1640250 (Wash. Ct. App. Mar. 30, 2020) (unpublished). *See*

18  Resp., Dkt. 88, at 7-9. Those cases apply well-settled Washington contract law to dramatically

19  different factual circumstances. Neither case supports the outcome Reed advocates.

20  *Burnett* arose from wage-related claims asserted by a pizza delivery driver. The driver

21  signed a one-page employment agreement at his orientation. *Burnett*, 470 P.3d at 489. The

22  agreement did not mention arbitration, but the employee handbook, which the plaintiff was

23  provided during employee orientation and told to read *later*, contained a binding arbitration

24  provision. *Id.* The employer moved to compel arbitration of wage-related claims pursuant to the

25  employee handbook. *Id.* at 490. The Washington Supreme Court affirmed the denial of the

26  motion because the driver "had no notice of the [handbook] when he signed the [employment

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  agreement].” *Id.* at 491. Even assuming the employment agreement incorporated the employment

2  handbook, the court noted that the driver “lacked knowledge of the incorporated terms,” and

3  concluded that “an arbitration provision included in an employee handbook is enforceable only if

4  the employee is given explicit notice about such provision.” *Id.* at 492.

5      *Burnett* is readily distinguishable. Instead of an incorporated-by-reference handbook with

6  no pre-contract opportunity to review its terms, Reed was presented a clear and concise pop-up

7  that advised her about changes to the dispute resolution provision and provided a red button

8  hyperlinking to the Terms, which were made available *before* Reed clicked “Accept!” Lee Decl.

9  Ex. B. “Under Washington law, a consumer cannot successfully argue that the contract is

10 unenforceable as long as [he or she] was not deprived of the opportunity to read it.” *In re Wyze*

11 *Data Incident Litig.*, 2020 WL 6202724, at *2 (citation and quotation marks omitted). Reed had

12 an opportunity to read the Terms, and she demonstrated mutual assent by clicking on the

13 “Accept” button. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) [*Huuuge II*].

14 Also, while the terms at issue in *Burnett* did not mention arbitration until the eighteenth page,

15 470 P.3d at 489, the Jackpot Party Casino Terms preview the arbitration provision in bold

16 language in the second paragraph. Lee Decl. ¶ 2, Ex. A at 1. Finally, while the *Burnett*

17 employment agreement made only a vague reference to the employer’s “FAIR” policy without

18 explanation, 470 P.3d at 489, here the pop-up expressly alerted Reed to the fact that the Terms’

19 “dispute resolution” provision had changed.

20     *Hastings* is no more helpful to Reed. Not only is it unpublished, but its first paragraph

21 expressly warns against “apply[ing] the result reached herein to any other dispute.” 2020 WL

22 1640250, at *1; *see In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *2 n.3 (disregarding

23 *Hastings* for that reason). Even setting aside that admonition, the circumstances here are

24 different. First, the *Hastings* court deferred to the trial court’s factual finding that the light-blue-

25 colored hyperlink to the terms of service was not clearly a hyperlink. 2020 WL 1640250, at *6.

26 By contrast, the Jackpot Party Casino pop-up displayed an entirely separate red button—a three-

SCIENTIFIC GAMES’ REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

dimensional polygon with shadowing effects to resemble a real-life button—entitled "Terms of Service." Lee Decl. Ex. B. Reed insists that the clearly labeled button, situated directly adjacent to the green "Accept!" button that Reed clicked, was not obviously a hyperlink to the Terms, Resp. at 8, but what else would it be? Second, the plaintiff in *Hastings* affirmed agreement to a different document (the "Terms of Token Sale") than the defendant sought to enforce (the "Terms of Service"). 2020 WL 1640250, at *7-8. Reed tries to analogize, arguing that the hyperlinked button and the Terms did not distinguish between the old Terms or the updated Terms. Resp. at 8. That too defies common sense: why would a pop-up and hyperlink requesting agreement to updated Terms provide a hyperlink only to the outdated and superseded version? Also, the pop-up here clearly provides that, "By clicking the 'Accept!' button below, you agree to our updated Terms of Service and Privacy Policy." Lee Decl. ¶ 4.

Neither *Burnett* nor *Hastings* changes Washington law regarding mutual assent. *See Reichert v. Rapid Invs., Inc.*, --- F. App'x ---, 2020 WL 6158307, at *1 (9th Cir. Oct. 21, 2020). In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the agreement. *Huuuge II*, 944 F.3d at 1219. This Court has routinely found mutual assent under Washington law in these circumstances. *See, e.g.*, *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *2 (dismissing the case and compelling arbitration); *Munning v. Nordstrom, Inc.*, No. C19-1810RSL, 2020 WL 1528477, at *1 & n.1 (W.D. Wash. Mar. 31, 2020); *Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at *6-7 (W.D. Wash. Nov. 19, 2019); *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-CV-1581-RAJ, 2019 WL 3564659, at *2-3 (W.D. Wash. Aug. 6, 2019). And there is no shortage of additional cases from other jurisdictions. *See* Mot. at 9-11. Tellingly, Reed's opposition addresses none of this authority.

**2.      Reed's inattention to the pop-up is irrelevant to enforceability.**

Swimming upstream against courts' near-unanimous enforcement of click-through agreements under similar circumstances, Reed seeks to invalidate it on another ground: that the

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   pop-up is stylistically similar to other pop-ups in the game and she "never paid attention" to any

2   of them. Reed Decl., Dkt. 90, ¶ 3; *see* Resp. at 6-7. Reed provides no support for this argument

3   because there is none. Refusing to read a pop-up that concisely identifies the Terms, clearly

4   hyperlinks to the Terms, and invites players to "Accept!" them, is no different than refusing to

5   read a printed contract before signing it with pen and ink—and does not vitiate the effect of

6   clicking or signing. *See Huuuge II*, 944 F.3d at 1219 ("Washington does not allow parties to

7   shirk contract obligations if they had actual or constructive notice of the provisions.").

8       The only authority Reed cites, Resp. at 6, is unrelated and stands for three unremarkable

9   propositions that, if anything, undermine her position:

10      *First*, Reed points out that assent depends on "the conspicuousness and placement of the

11  terms and conditions, as well as the content and overall design of the app." *Huuuge II*, 944 F.3d

12  at 1220. True. But as Scientific Games explained, Mot. at 11-12, and Reed does not dispute, the

13  circumstances here differ dramatically from the flaws identified with the browsewrap agreement

14  in the *Huuuge* case. *See* 944 F.3d at 1221 (terms lacked a "box for the user to click to assent,"

15  lacked a hyperlink, and were "buried" beneath "an ambiguous button" and "multiple screen-

16  lengths of similar-looking paragraphs").

17      *Second*, Reed observes that courts "impute an intention corresponding to the reasonable

18  meaning of a person's words and acts." *City of Everett v. Sumstad's Estate*, 631 P.2d 366, 367

19  (Wash. 1981). That too is true, and it is difficult to imagine a clearer manifestation of assent than

20  clicking "Agree!" to a pop-up that informed Reed the "Terms of Service have changed" and that

21  "[b]y clicking the 'Accept!' button below, you agree to the Terms of Service." Lee Decl. ¶ 4.

22      *Third*, Reed relies on *Weiss v. Lonnquist*, 224 P.3d 787, 792 (Wash. Ct. App. 2009), to

23  argue that the parties' course of dealing is relevant to assessing mutual assent. *Weiss* addressed

24  not whether the parties' course of dealing vitiated acceptance of the Terms, but whether to infer

25  an agreement to arbitrate based on a previous, expired contract. And even if the course of dealing

26  were relevant, the course of dealing here undermines Reed's position because the other pop-ups

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   she identifies differ dramatically in content and design. *Compare* Lee Decl. Ex. B, *with* Perlstadt

2   Decl., Dkt. 89, ¶ 3, *and* Resp. at 4 (pop-ups inviting the player to spin a wheel and collect coins).

3         Finally, Reed suggests that the contract should not bind her because she was "addicted"

4   to the game. Resp. at 1, 2, 5, 6, 9. That theory lacks both credible evidence and relevance.

5   Diagnosing addiction is complex and individualized, *see* American Psychiatric Association,

6   *Diagnostic and Statistical Manual of Mental Disorders* 585-89 (5th ed. 2013) (DSM-5 section on

7   non-substance-related addictive disorders), and Reed has provided nothing more than her own

8   say-so. Even if Reed considered herself addicted to Jackpot Party Casino, she provides no

9   support for the counterintuitive argument that her unexpressed and subjective self-diagnosis

10  should inform the inquiry into her "outward manifestations of intent."[1] Resp. at 6.

11        **3.       Rule 23(d) does not nullify Reed's click-through acceptance.**

12        "Defendants in class action litigation are generally allowed to communicate with putative

13  class members prior to certification of the class." *Nugussie v. HMS Host N. Am.*, No. C16-

14  0268RSL, 2017 WL 1250420, at *1 (W.D. Wash. Apr. 5, 2017) (citing Newberg on Class

15  Actions § 9:7 (5th ed.)). Nonetheless, Reed contends that the pop-up was an improper

16  communication because it somehow misled and coerced her, and she asks the Court to vitiate her

17  agreement and invalidate the Terms in their entirety under Rule 23(d). Reed's argument (and the

18  district court cases she relies on) depart dramatically from the text of Rule 23(d) and binding

19  authority.

20              **a.       Rule 23(d) authorizes procedural relief in limited circumstances.**

21        Rule 23(d) provides courts with the authority "to exercise control over a class action and

22  to enter appropriate orders governing the conduct of counsel and parties," but as the Supreme

23  Court has cautioned, courts' discretion "is bounded by the relevant provisions of the Federal

24  _____

25        [1] Reed's reference to her alleged addiction is so undeveloped it is difficult to know what
to make of it. At best, it sounds like a challenge to the enforceability of the Terms based on a
kind of duress. But the law is clear, and Reed does not dispute, that such a challenge must be
26  decided *by the arbitrator* given the broad delegation of gateway issues. *See* Mot. at 15-16;
*Weimin Chen*, 2019 WL 3564659, at *4.

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Rules." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). A Rule 23(d) order must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. "Rule 23(d) is discretionary, permitting, but not requiring, a court to issue orders." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 253 (S.D.N.Y. 2020).

### b.  The district court decisions that Reed cites should not be followed and, at any rate, do not apply.

The Ninth Circuit's seminal case on Rule 23(d)(1), *Wang v. Chinese Daily News, Inc.*, holds that corrective measures may be warranted where a class has been certified and there are specific findings that the defendant engaged in extraordinary coercive actions to discourage participation. 623 F.3d 743, 757 (9th Cir. 2010), *judgment vacated on other grounds*, 565 U.S. 801 (2011). That principle is inapplicable here: there were no threats or coercion of any type. Instead, Reed accepted clearly spelled out terms of service, including arbitration and choice of venue, in exchange for the ability to access and play online games. Reed seeks to invalidate an industry-standard click-through agreement that she agreed to months before surfacing as a putative class member in this uncertified putative class action.

The circumstances here deviate so dramatically from *Wang* that Reed does not even mention the case. Instead, she relies on district court decisions that stretched Rule 23(d) and *Wang* to invalidate arbitration provisions agreed to by putative members of uncertified classes.[2] Resp. at 9-12.

This Court should not follow those decisions. *See Chen-Oster*, 449 F. Supp. 3d at 263 (explaining that the "vitality" of "perhaps all the district [court] cases within the Ninth Circuit in which courts voided arbitration provisions pursuant to Rule 23(d) [] may now be uncertain [] given the Ninth Circuit's orders reversing and vacating *O'Connor* [*v. Uber Techs., Inc.*, No. C-

---

[2] Reed also cites a Fourth Circuit case about waiver, which does not mention Rule 23(d). *See Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 140-41 (4th Cir. 2018), *cert. denied*, 138 S. Ct. 2666 (2018).

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013), *rev'd*, 904 F.3d 1087 (9th Cir.

2   2018)]"). The cases are remarkable for their departure from the text and precedential

3   interpretations of Rule 23(d). Reed does not identify which component of the Rule purportedly

4   authorizes the relief she seeks, nor is it self-evident: subsection (1)(A) empowers the court to

5   establish procedures "to prevent undue repetition or complication in presenting evidence or

6   argument"; (B) authorizes the court to order notice in certain circumstances; (C) permits the

7   court to impose conditions on named plaintiffs and intervenors; and (D) pertains to amending

8   pleadings. That leaves the catchall, subsection (1)(E), but invalidating an arbitration agreement

9   (or the entirety of the Terms, as Reed advocates), is hardly a "procedural matter[]" similar to

10  those enumerated in subsections (A)-(D).

11      The decisions on which Reed relies are as untethered from precedent as they are from

12  text. The Supreme Court's seminal decision, *Gulf Oil*, invalidated Rule 23(d) relief and clarified

13  that district courts' discretion "is bounded by the relevant provisions of the Federal Rules." 452

14  U.S. at 100. *Wang*, the Ninth Circuit case on which the district courts relied, addressed a

15  procedural component of a class action: opt-outs elicited from members of a certified class.

16  Invalidating an arbitration provision, which does not stem from Rule 23 and relates only

17  tangentially to the class mechanism, is different in kind.

18      Indeed, federal law forecloses the expansion of Rule 23(d)—a procedural rule—to

19  invalidate arbitration provisions. The Rules Enabling Act provides that the Federal Rules of Civil

20  Procedure may not "abridge, enlarge or modify any substantive right." 28 U.S.C.A. § 2072(b).

21  Applying Rule 23(d) to invalidate arbitration agreements conflicts with Supreme Court precedent

22  holding that the Federal Arbitration Act precludes defenses to contract formation and

23  enforcement that disfavor arbitration. *E.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct.

24  1421, 1428 (2017). *Wang* treads carefully around those federal statutes; Reed's district court

25  cases trample them.

26

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Reed relies heavily on *Kater v. Churchill Downs, Inc.*, but that case is most notable for its

2    differences. 423 F. Supp. 3d 1055 (W.D. Wash. 2019). As in other cases Reed cites, the plaintiffs

3    in *Kater* did not concede that they consistently played the game after the pop-up was issued. The

4    relief in *Kater* was also much narrower than the relief Reed requests. The *Kater* Court refused

5    the plaintiffs' request "that the Court invalidate any purported arbitration agreements," *id.*

6    at 1061, and instead issued only "narrow" prospective relief limiting the manner that future pop-

7    ups could be presented, *id.* at 1065. Another major difference is that in *Kater* and another related

8    case, *Wilson v. Huuuge, Inc.*, No. 3:18-cv-05276-RBL, Dkt. 69, 82, the plaintiffs swiftly sought

9    affirmative relief from the allegedly coercive and misleading pop-up, while Reed (with the same

10   counsel as in those cases) waited almost a year after the pop-up issued, until Scientific Games

11   moved to compel arbitration, and requested relief only in a response brief.

12   Reed claims that her status in 2019 as an unidentified putative class member poses

13   "ethical questions involving communications with represented parties." Resp. at 16. She ignores

14   that defendants are allowed to communicate with unnamed class members before a class is

15   certified. *Nugussie*, 2017 WL 1250420, at *1. Scientific Games issued the November 2019 pop-

16   up months before Reed surfaced in this litigation. Lee Decl. ¶ 8; *see* ABA Comm. on Ethics and

17   Prof'l Responsibility, Formal Op. 07-445 (2007) (no ethical bar on communicating with potential

18   class members before certification because no client-lawyer relationship exists). It did not learn

19   that Edelson represented Reed until May 2020, when Edelson sought to substitute Reed as the

20   named plaintiff in this case. *See* Dkt. 52, 55. The cases on which Reed relies involved arbitration

21   agreements sent to *named* plaintiffs with *known* representation. *Dasher v. RBC Bank (USA)*, 882

22   F.3d 1017, 1021-22 (11th Cir. 2018) ("PNC knew Dasher was an adverse litigant actively

23   represented by counsel" who was "forcefully and consistently resisting arbitration of the pending

24   litigation."); *Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014) (similar). The rationale

25   of those cases—incredulity that a named plaintiff would agree to a litigation-ending arbitration

26   provision—does not extend to unknown, putative class members, who may opt out of a class

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

action. Nor is there any ethical concern; indeed, it remains unclear whether Reed was represented when she received the pop-up. *See* Wash. RPC 4.2 (circumscribing communications with "a person the lawyer knows to be represented").

### c.      Even if Rule 23(d) applies, the Court should not invalidate Reed's agreement to arbitrate future claims.

Even if the Court is concerned with Reed agreeing to arbitrate *past* claims, and it should not be, any relief under Rule 23(d) must stop at those past claims and should not impact Reed's agreement to arbitrate future claims against Scientific Games. Any remedy under Rule 23(d) must be "restricted to the minimum necessary to correct the effects of improper conduct," *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 310 (3d Cir. 2005), "giving explicit consideration to the narrowest possible relief which would protect the respective parties," *Gulf Oil*, 452 U.S. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)).

There is no basis for applying Rule 23(d) to claims that accrued *after* Reed received the pop-up in November 2019. A communication cannot coerce or mislead about claims that have not accrued, and do not exist, when the communication is received. Whatever concerns the Court might have about the Terms requiring Reed to arbitrate *past* claims for which there was a putative class action pending, there can be no doubt that Scientific Games may require Reed (or any other player) to agree to arbitrate any claims as a condition of *continuing to play* Jackpot Party Casino. *See Kater*, 423 F. Supp. 3d at 1065 (limiting relief to "players who have purchased chips during the relevant time periods and are therefore members of the putative class(es)," but declining to "interfere with Big Fish's communications with new players or old players who did not purchase chips in the relevant time frames"). Thus, even if the Court applies Rule 23(d) to the arbitration provision, the "narrowest possible relief," *Gulf Oil*, 452 U.S. at 102, would apply only to claims that had accrued by November 13, 2019. *See* Lee Decl. ¶ 8.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**d.      Rule 23(d) does not extend to the forum-selection clause, so the Court must transfer any remaining claims to the District of Nevada.**

Even if the Court does not apply the arbitration provision to claims that accrued prior to Reed agreeing to the pop-up, those claims must be transferred to the District of Nevada. Even the most expansive understanding of Rule 23(d) has nothing to say about forum-selection clauses, and Reed cites no authority to the contrary. That is because (contrary to Reed's argument, Resp. at 10) the forum-selection clause does not "prevent [Reed or anyone else] from participating" in this case. She can pursue it equally in federal court in Nevada. Because Reed does not otherwise dispute that the forum-selection clause is binding, mandatory, and applicable, the Court must transfer venue. *See* Mot. at 17-21.

**B.      Reed Agreed to the Terms by Continuing to Play Jackpot Party Casino**

Reed agreed to the Terms in another way: after the pop-up put her on notice of the Terms, she continued playing the game almost every day. *See Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 613-14 (2d Cir. 2020) (summary order) (applying Washington law). This independently sufficient manifestation of agreement is the most straightforward way to resolve this motion, because—as Reed acknowledges—it does not implicate the request for Rule 23(d) relief. *See* Resp. at 9-12 (limiting the Rule 23(d) argument to Reed's click-through acceptance).

Reed disavows actual knowledge that gameplay constitutes acceptance, Reed Decl. ¶ 6, but having clicked to accept the Terms, she has constructive knowledge of the contents of the Terms. *See Hastings*, 2020 WL 1640250, at *7 (citing *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)) ("[A] party may generally not escape the obligations of a contract by claiming to have never read its terms . . . ."); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (applying that principle in the online context). Her constructive knowledge includes the Terms' repeated confirmation that playing the game constitutes assent. Lee Decl. Ex. A §§ 3, 21, 22. Reed knew the Terms applied, and they "were readily available to [her] on the website" and "clearly stated that continued [gameplay] would

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  constitute acceptance." *Gutierrez v. FriendFinder Networks Inc.*, No. 18-CV-05918-BLF, 2019

2  WL 1974900, at \*7 (N.D. Cal. May 3, 2019). She accepted them by continuing to play.[3] *Id.*

3       The pop-up was the primary way Reed knew of the Terms, but it was not the only way.

4  Reed was also reminded of "the hyperlinked terms of service and their arbitration clause"

5  through the litigation, after she retained counsel and sought to intervene. Dkt. 67 at 11 n.4 (filed

6  July 6, 2020). Reed denies actual knowledge of that filing and cites a case about imputing

7  knowledge gained by lawyers while representing a *different* client. Resp. at 13-14. That case is

8  inapposite: knowledge that Edelson obtained while representing Reed as a prospective

9  intervenor—including of the Terms and their arbitration provision in a brief filed in this case—is

10 imputed to Reed. *Hill v. Dep't of Labor & Indus.*, 580 P.2d 636, 638 (Wash. 1978).

11      Reed's other arguments miss the point. She says that the hyperlink to the Terms at the

12 bottom of the browser may not always have been immediately visible, Resp. at 13 & n.3, but that

13 is irrelevant. The in-game hyperlink merely shows how readily Reed could access the Terms

14 (being aware of them through other means). Lee Decl. ¶ 16; *Gutierrez*, 2019 WL 1974900, at \*7.

15 **III.   CONCLUSION**

16      Scientific Games respectfully requests that the Court compel arbitration and dismiss this

17 case, or in the alternative, transfer venue to the District of Nevada.

18

19

20

---

21     [3] The cases Reed cites in her argument to the contrary, Resp. at 14, are distinguishable not only based on Reed's knowledge that gameplay constitutes acceptance, but also based on the

22 form of notice and acceptance. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (browsewrap case acknowledging that the outcome "might be different" if the plaintiff

23 "was required to affirmatively acknowledge the Terms of Use before completing his online purchase"); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012) (email did not appear

24 to be contractual in nature or suggest a change to the terms); *Robbins v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05603-RBL, 2019 WL 4139297, at \*5 (W.D. Wash. Aug. 30,

25 2019) (email "contain[ed] no language that would put a reasonable employee on notice that an offer to contract was on the table"); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs.*

26 *Litig.*, 298 F. Supp. 3d 1285, 1293-97 (N.D. Cal. 2018) (compelling arbitration based on a phone guidebook's cover that said the terms and conditions were contained therein).

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2   DATED: October 30, 2020                 By: *s/* Kathleen M. O'Sullivan

3                                      Kathleen M. O'Sullivan, WSBA No. 27850
Nicola C. Menaldo, WSBA No. 44459
David T. Martin, WSBA No. 50160

4

5                                        **Perkins Coie LLP**
1201 Third Avenue, Suite 4900

6                                        Seattle, WA 98101-3099
Telephone: 206.359.8000

7                                        Facsimile: 206.359.9000
Email:    KOSullivan@perkinscoie.com

8                                                     NMenaldo@perkinscoie.com
DMartin@perkinscoie.com

9                                        Attorneys for Defendant
Scientific Games Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SCIENTIFIC GAMES' REPLY ISO MOT.
TO COMPEL ARBITRATION, TRANSFER
VENUE (No. 2:18-cv-00565-RSL) – 13