1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONNA REED, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

SCIENTIFIC GAMES CORP.,

Defendant.

Cause No. C18-0565RSL

ORDER DENYING DEFENDANT'S
MOTION TO COMPEL
ARBITRATION OR TRANSFER
VENUE

This matter comes before the Court on "Defendant Scientific Games' Motion to Compel

Arbitration or, in the Alternative, Transfer Venue." Dkt. # 82. This lawsuit was filed in April

2018, alleging that defendant makes and distributes electronic casino games that violate

Washington's gambling laws and seeking relief on behalf of a class of Washington players who

purchased and lost chips in defendant's games. More than a year after suit was filed, defendant

rolled out new Terms of Service. The new terms and conditions included an agreement to

arbitrate "any and all claims (regardless of the date of accrual of such claim) arising out of or in

connection with" its games, a class action and jury waiver applicable in both arbitration and in

court, a choice of Nevada law provision, and a venue provision requiring that all disputes be

heard in Clark County, Nevada. Dkt. # 83-4 at 14 and 17. Between August and November 2019,

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 1

defendant caused a pop-up to open immediately and automatically when a new or existing customer opened one of its games. The version of the pop-up presented to existing customers, including class representative Donna Reed, displayed as follows:



The user could not access the game until he or she pushed the "Accept!" button. The Terms of Service could be accessed by pushing the red "Terms of Service" button.

When the new Terms of Service were rolled out, Ms. Reed was a putative class member. She had started playing defendant's Jackpot Party Casino in 2013 and found it immediately addictive. She played the game "7 days a week for probably 5 to 6 hours a day" and estimates that she spent over $30,000 in the game. Dkt. # 90 at ¶¶ 1-2. She has no recollection of seeing or accepting the above pop-up, but reports that pop-ups were common: "When I played Jackpot Party Casino, I would get tons of pop-up messages, often as soon as I opened the game. I never

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 2

paid attention to these pop-ups and just clicked through them so I could get started playing the slots as soon as possible." *Id.* at ¶ 3. Plaintiff has provided two recent examples of these pop-ups:





After plaintiff presumably clicked on the "Accept!" button in 2019, she proceeded to the

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 3

1
2
3
4
5
6
7
8

Jackpot Party Casino game screen where the Terms of Service could be accessed through a hyperlink at the bottom of the page. Dkt. # 83 at ¶ 16. The Terms of Service were also accessible through the URL https://www.sciplay.com/terms-of-service/. Dkt. # 83 at ¶ 15. The Terms of Service provided that use of defendant's games "constitutes agreement to the Terms." Dkt. # 83-1 at 2; Dkt. # 83-4 at 2. Plaintiff asserts that she was unaware that there were any terms or conditions governing her use of the game until her counsel notified her of defendant's motion to compel arbitration. Dkt. # 90 at ¶ 6.

9
10
11
12
13
14

Defendant seeks to compel arbitration, arguing that plaintiff agreed to arbitrate (and agreed to allow the arbitrator to decide "gateway" questions related to arbitrability) both when she clicked the "Accept!" button and when she continued to play Jackpot Party Casino. If arbitration is not compelled, defendant requests that the case be transferred to the District of Nevada pursuant to the venue selection clause of the Terms of Service.

15
16
17
18
19
20
21
22

Plaintiff argues that, in the context in which the Terms of Service pop-up was presented, neither clicking the "Accept!" button nor continuing to play can be considered an objective manifestation of assent. If, in the alternative, the pop-up gave actual or constructive notice of the game's terms as a matter of contract law, plaintiff argues that remedial action under Fed. R. Civ. P. 23(d) is necessary to effectively manage communications with the class and ensure the fair administration of this representative action. Plaintiff argues that, either way, the Terms of Service cannot be enforced against plaintiff or the absent class members.

23
24
25

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

26
27

//

28

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 4

**A. Contract Formation - Mutual Assent**

The Federal Arbitration Act ("FAA") makes agreements to arbitrate disputes "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party "'aggrieved by the alleged ... refusal of another to arbitrate' [may] petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4). The goal of the FAA was to place arbitration agreements "upon the same footing as other contracts," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks omitted), and to counteract a perceived judicial hostility toward arbitration that sometimes overrode the parties' intent in contracting, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270-72 (1995). A court's role is generally "limited to determining (1) whether a valid agreement to arbitrate exists[1] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citation omitted).

Determining whether parties have agreed to submit to arbitration requires application of "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "As the party seeking to compel arbitration, [defendant] bears 'the burden of proving the existence of an agreement to arbitrate by a

---

[1] "Notwithstanding any delegation clause in the Agreement, 'challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration.'" *Reichert v. Rapid Invs., Inc.*, 826 F. App'x 656, 658 (9th Cir. 2020) (quoting *Sanford v. MemberWorks, Inc*., 483 F.3d 956, 962 (9th Cir. 2007)).

preponderance of the evidence.'" *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014)). The parties agree that Washington law applies to issues of contract formation. *See* Dkt. # 82 at 14; Dkt. # 88 at 9. "Washington follows the objective manifestation test for contracts. . . . Accordingly, for a contract to form, the parties must objectively manifest their mutual assent . . . ." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177 (2004) (citations omitted). "The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from their outward expressions and acts, and not from an unexpressed intention." *Wash. Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 516 (1923). "We impute an intention corresponding to the reasonable meaning of a person's words and acts. . . . If the offeror, judged by a reasonable standard, manifests an intention to agree in regard to the matter in question, that agreement is established." *City of Everett v. Sumstad's Est*., 95 Wn.2d 853, 855-56 (1981).

In this case, plaintiff was notified that (a) there were new Terms of Service, including a dispute resolution provision, that would govern her use of Jackpot Party Casino and (b) clicking the big green button with the word "Accept!" on it would constitute her agreement to the Terms of Service. She clicked the big green button. Judged by a reasonable standard, plaintiff's objective conduct manifested an intention to agree to the terms and conditions offered by defendant. She argues, however, that she did not subjectively intend to bind herself to the new Terms of Service. Rather, she was simply clicking whatever buttons she needed to click to get to the game she wanted to play.

In certain situations, an objective manifestation of assent will not form a contract. In *Knutson*, 771 F.3d at 566, for example, the court noted that despite apparent indications of assent, an offeree "is not bound by inconspicuous contractual provisions of which he was

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 6

unaware, contained in a document whose contractual nature was not obvious." In *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 49 (2020), and *Hastings v. Unikrn, Inc.*, 12 Wn. App 2d 1072, 2020 WL 1640250, at * 7 (2020), the offerees were deprived of the opportunity to read the contracts at the time they purportedly agreed and were therefore not bound. Neither of those situations is relevant here. The pop-up plaintiff saw was very conspicuous - unavoidable, even - and it clearly notified plaintiff that new terms and conditions would govern further use of Jackpot Party Casino if she clicked the "Accept!" button. The pop-up asked plaintiff to check out the updated versions of the policies, providing big red buttons labeled "Terms of Service" and "Privacy Policy" for her immediate and timely review. Even if the only thing plaintiff looked for when the pop-up appeared was the button that would get her into the casino as fast as possible, that button let her know that she was accepting something.[2] She simply chose not to read whatever it was she was accepting, which is not a defense to contract formation in Washington. *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389 (1993) ("Where a party has signed a contract without reading it, that party cannot successfully argue that mutual assent was lacking as long as the party was not deprived of the opportunity to read the contract, the contract was plain and unambiguous, the party was capable of understanding the contract, and no fraud, deceit, or coercion occurred.") (internal quotation marks and citation omitted). Defendant has demonstrated mutual assent to the Terms of Service as between itself and Ms. Reed.

---

[2] Had the green button said something game related or ambiguous, such as "I'm in" or "Let's Play," plaintiff would have a better argument. As it is, however, pushing a button that says "Accept!" is materially different than the "Spin!" and "Collect!" buttons on the other pop-ups used in the game and, at the very least, put plaintiff on inquiry notice regarding what it was she was accepting.

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 7

**B. Federal Rule of Civil Procedure 23(d)**

In the alternative, plaintiff argues that the Terms of Service are unenforceable even if she

assented to the terms because defendant's communication impermissibly interfered with the

Court's management of this class action litigation. Rule 23(d) states:

> (d) Conducting the Action.
>
> (1) In General. In conducting an action under this rule, the court may issue orders that:
>
> > (A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;
> >
> > (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:
> >
> > > (i) any step in the action;
> > >
> > > (ii) the proposed extent of the judgment; or
> > >
> > > (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
> >
> > (C) impose conditions on the representative parties or on intervenors;
> >
> > (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
> >
> > (E) deal with similar procedural matters.
>
> (2) Combining and Amending Orders. An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

Rule 23(d) "provides courts with considerable discretion in regulating defendant

communications with putative class members to prevent abuse." *Kater v. Churchill Downs, Inc.*,

423 F. Supp.3d 1055, 1062 (W.D. Wash. 2019) (citations omitted). Because of the opportunities

for over-reaching when communications with putative class members are unrestricted and the

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 8

management challenges posed by representative litigation, the court has "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). *See also Wang v. Chinese Daily News, Inc*., 623 F.3d 743, 755 (9th Cir. 2010).

The Ninth Circuit has held that, "[i]n the face of evidence of coercive behavior by a party opposing a class, district courts may regulate communications with class members related to the notice and opt-out processes." *Wang*, 623 F..3d at 755. Defendant argues that remedial action under Rule 23(d), including control over communications, invalidation of settlements or opt-out requests, and/or curative notice to the class, are appropriate under *Wang* only where a class has already been certified and there is evidence of extraordinary coercive conduct on the part of the defendant. While those were the facts evaluated in *Wang*, the Ninth Circuit's decision is not so limited. Instead, the Ninth Circuit authorized control over communications "when a party engages in behavior that threatens the fairness of the litigation." *Id.* at 756. *See also Gulf Oil*, 452 U.S. at 104 (contemplating remedial measures under Rule 23(d) not only when there is evidence of coercion and/or deception, but also when communications or conduct threaten the fair administration of class actions); *Balasanyan v. Nordstrom, Inc*., No 10-cv-2671JM-WMC, 2012 WL 760566, at *3 (S.D. Cal. Mar. 8, 2012) (finding that the court's supervisory powers under Rule 23(d) extend to any communications affecting participation in the lawsuit).

In *Wang*, an employer overtly encouraged employee class members to opt-out of the litigation and engaged in coercive tactics, including targeted firings, that had the effect of increasing the number of opt-outs and reducing the size of the class. Upon careful consideration, the Court finds that, although the conduct at issue in *Wang* was more egregious, the conduct at issue in this case is an even "more serious threat to the fairness of the litigation process, the

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 9

adequacy of representation[,] and the administration of justice" than the conduct at issue in

*Wang*. 623 F.3d at 756 (quoting *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988)).

The class of employees in *Wang* had at least received a court-approved notice regarding the

litigation, the claims asserted, and the status of the case before defendant began its campaign to

convince/coerce class members to opt out. Here, defendant made changes to its terms and

conditions of use which, if accepted, would essentially opt putative class members out of the

class and retroactively change the governing law so that the class claims would fail, all without

any acknowledgment of this litigation, description of the claims asserted, summary of the status

of the case, input from the named plaintiff or her counsel, or oversight from the Court. While the

mere existence of a class action lawsuit does not necessarily bar a defendant from changing its

business practices or form agreements, when the change would interfere with claims asserted on

the class' behalf, retroactively invalidating the claims before the class is even aware that a

lawsuit is pending and they may be entitled to relief, the Court has the discretion, if not the duty,

to impose limitations under Rule 23(d). *See Kater*, 423 F. Supp.3d at 1063 (noting that class

notice is to be written in "plain, easily understood language" that is scrupulously neutral, and

that defendant's pop-up was not likely to inform "class members who have likely never even

heard of these cases" of the stakes when clicking "I agree") (quoting Rule 23(c)); *Kutzman v.*

*Derrel's Mini Storage, Inc*., 354 F. Supp.3d 1149, 1156 (E.D. Cal. 2018) (finding settlement

offer to putative class members improper under Rule 23(d) where it failed to explain the status

of the case); *In re Currency Conversion Fee Antitrust Litig*., 224 F.R.D. 555, 569 (S.D.N.Y.

2004), *opinion modified on reconsideration*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ("A court

may exercise supervisory authority over a defendant's communications with putative class

members. *See* Fed. R. Civ. P. 23(d). This is particularly apt where a defendant attempts to alter

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 10

the contours of the litigation or the availability of remedies.").

In addition, the Court finds that defendant's offer was both coercive and deceptive. In order to avoid the new Terms of Service, Ms. Reed would have had to forfeit any tokens she had already purchased, with no opportunity for a refund and no opt-out procedure. *See McKee v. Audible, Inc.*, No. 17-cv-1941GW(EX), 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6, 2018). The pop-up through which the Terms of Service was offered was misleading in that it failed to notify putative class members that they were at risk of forfeiting claims that had already accrued and were being actively litigated on their behalf. *See Cheverez v. Plains all Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *4 (C.D. Cal. Mar. 3, 2016) ("Courts routinely hold that releases are misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action."); *Jimenez v. Menzies Aviation Inc.*, No. 15-cv-2392WHO, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (where defendant did not inform putative class members about the pending class action and the impact the new policy would have on their rights in the case, courts have discretion to invalidate or refuse to enforce the resulting arbitration agreement under Rule 23(d)); *Burford v. Cargill*, No. 05-0283, 2007 WL 81667, at *2 (W.D. La. 2007) ("Use of [a] general receipt and release...by Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law"). To paraphrase the Eleventh Circuit, whatever right defendant has to require its users to agree to arbitrate as a condition of continuing to play Jackpot Party Casino, its post-litigation efforts were "confusing, misleading, coercive, and clearly designed to thwart unfairly the right of" putative class members "to make an informed choice as to whether to participate" in this class action litigation. *Billingsley v. Citi Trends, Inc.*, 560 Fed. App'x 914, 922 (11th Cir. 2014).

Finally, defendant argues that the Rules Enabling Act, 28 U.S.C. § 2072(b), requires that Rule 23(d) be interpreted so as to safeguard the substantive rights granted by the FAA. This argument was first raised in reply, and plaintiff did not have the opportunity to respond. Nevertheless, the Rules Enabling Act cannot be used as defendant hopes. Defendant has not identified any ambiguity in Rule 23(d) that could be interpreted in its favor. The Rule authorizes the control of communications to absent class members in order "to protect class members and fairly conduct the action" with particular attention to safeguarding the class' opportunity to participate in the action. Fed. R. Civ. P. 23(d)(1)(B). Numerous federal courts have concluded that the Rule is properly invoked to invalidate agreements - settlement agreements, opt-out agreements, arbitration agreements, *etc*. - that were obtained through communications that lacked judicial oversight and posed a risk to the fair conduct of class action litigation. As was the case in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 405-06 (2010), in the absence of a showing that Rule 23 is susceptible to two meanings, one of which would violate the Rules Enabling Act and the other that would not, defendant is seeking the invalidation of Rule 23(d) to the extent it impacts the substantive policies of the FAA. The issue then becomes whether Rule 23(d) "falls within the statutory authorization" provided by the Rules Enabling Act. *Id.* at 406.

"In the Rules Enabling Act, Congress authorized [the Supreme Court] to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right,' § 2072(b)." *Id.* at 406-07. As long as the rule at issue "really regulates procedure - the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them," *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941), it is a valid exercise of the

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 12

Supreme Court's power regardless of any "practical effect on the parties' rights," *Shady Grove*, 559 U.S. at 407. A Federal Rule of Civil Procedure was either validly enacted to regulate procedure or it was not: the rule cannot be valid in some cases and invalid in others. *Shady Grove*, 559 U.S. at 409-410. Because defendant has shown neither an ambiguity in Rule 23(d) that could be interpreted so as to avoid a conflict with the FAA nor that Rule 23(d) was an improper exercise of the Supreme Court's rule-making authority, its argument under the Rules Enabling Act fails.

For all of the foregoing reasons, the Court will not enforce the Terms of Service defendant rolled out in 2019.[3] The motion to compel arbitration or, in the alternative, to transfer venue to the United States District of Nevada (Dkt. # 82) is DENIED.

Dated this 17th day of June, 2021.

MWⁿ S Casnik

Robert S. Lasnik
United States District Judge

---

[3] Defendant argues that, even if the arbitration provision is not enforceable, the Court should nevertheless transfer this case to the District of Nevada pursuant to the venue selection provision. The Terms of Service, as a whole, were obtained through coercive and misleading communications necessitating remedial action under Rule 23(d). Neither the arbitration provision nor the venue selection provision will be enforced.

ORDER DENYING DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER VENUE - 13